SCHRADER & EHLERS *v.* UNITED STATES Nos. 686 and 718).[1]

FOUNTAIN-PEN BARREL NOT A PENHOLDER.

There is no question of commercial designation, and "penholder" as employed in the statute can not reasonably be held to include the rubber article of the importation. The language of paragraph 187, tariff act of 1909, clearly contemplates that fountain pens for tariff purposes should be distinguished as they are in fact and in common understanding from the ordinary penholder, and should be subject to a different rate of duty. The importations were dutiable as manufactures of hard rubber under paragraphs 450, tariff act of 1897, and 464, tariff act of 1909, respectively.

United States Court of Customs Appeals, January 11, 1912.

APPEAL from Board of United States General Appraisers, Abstract 25431 (T. D. 31543).

[Affirmed.] .

*Curie, Smith & Maxwell* (*John K. Maxwell, W. Wickham Smith,* and *Thomas M. Lane* of counsel) for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.

. Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

. BARBER, Judge, delivered the opinion of the court:

These two cases, one of which is an appeal from the Circuit Court for the Southern District of New York and the other an appeal from the Board of General Appraisers, involve the same questions.

The importation, the dutiable character of which is reviewed here upon the appeal from the judgment of the Circuit Court, was made under the tariff act of 1897, while that involved in the appeal from the judgment of the board was made under the act of 1909.

The merchandise under consideration is rubber holders for fountain pens composed of the ordinary separable rubber barrel, one part of which screws into the other, with a reservoir for holding ink therein, a feed barrel for conducting the ink to the pen, and a cap to cover the pen when not in use. In other words, it is an incomplete fountain pen, and all that is required to complete it ready for use is to put in the ink and put in place the pen.

In each case the importation was assessed as a manufacture of "hard rubber" under paragraph 450 and paragraph 464 of the respective acts. The importers claimed it to be dutiable under paragraph 187 of the act of 1897 and under paragraph 187 of the act of 1909, which are, respectively, as follows:

*1897.*—187. Penholder tips, penholders or parts thereof, and gold pens, twenty-five per centum ad valorem.

*1909.*—187. Penholder tips, penholders and parts thereof, five cents per gross and twenty-five per centum ad valorem; gold pens, twenty-five per centum ad valorem; fountain pens, stylographic pens, thirty per centum ad valorem; combination penholders, comprising penholder, pencil, rubber eraser, automatic stamp, or other attachment, forty per centum ad valorem: *Provided,* That pens and penholders shall be assessed for duty separately.

---

. [1] Reported in T. D. 32169 (22 Treas. Dec., 70).

No question of commercial designation is made in either case, but it is claimed that under the provisions of both tariff acts the importations are penholders within the ordinary meaning of the paragraph cited.

The meaning of the word "penholder" is not difficult of ascertainment or understanding.   In the Century Dictionary it is defined as follows:

A holder for pens or pen points.  It consists of a handle or stock with a device for retaining the pens, usually a socket of metal.

Other lexicographers do not materially vary this definition.

In none of the dictionaries is it suggested that a penholder contains a reservoir or cavity for the holding of ink fitted with a device for furnishing a continuous supply of ink to the point of the pen.   In this respect and also in respect of the provision made for protecting the point of the pen when not in use, namely, the cap, the importations manifestly differ from the penholder as that word is used in ordinary parlance.

We do not think the word "penholder" as used in the statutes fairly includes the merchandise in question.   We think that the language of paragraph 187 of the act of 1909 clearly contemplates that fountain pens for tariff purposes should be distinguishable, as they are in fact and in ordinary understanding, from the ordinary penholder and subject to a different rate of duty.   Unless such construction be given to paragraph 187 we are unable to see how force and effect could be given to the provisions therein relating to fountain pens.

It appearing that the merchandise is made of hard rubber it follows that the same was dutiable as assessed in each case.

The result is that the judgment of the Circuit Court in the one case and that of the Board of General Appraisers in the other is *affirmed*.